IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

WAYNE ALLEN STOKER,                                                                MOVANT

v.                                                                        No.:  3:11cr69-MPM

UNITED STATES OF AMERICA,                                                    RESPONDENT

**MEMORANDUM OPINION AND ORDER**

Wayne Allen Stoker is a federal prisoner who is proceeding *pro se* on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  The Government has submitted a response to the motion.  Having considered the pleadings and the record, including the relevant parts of Stoker's underlying criminal case, along with the relevant law, the Court finds that an evidentiary hearing is unnecessary[1], and that the motion should be denied.

**Background Facts and Relevant History**

On April 27, 2011, Wayne Allen Stoker was charged in a two-count indictment alleging that he retaliated against a witness and mailed a threatening communication in violation of 18 U.S.C. § 1513(e) and 18 U.S.C. § 876(c).  The events leading up to the April 2011 indictment involve Stoker's guilty plea to the 2009 arson of the "Dam Bar," which was a business located in Coffeeville, Mississippi.  Stoker pleaded guilty to wilfully and maliciously setting fire to the

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief.  *See* 28 U.S.C. § 2255(b); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).  It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence.  *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982).  Accordingly, if there is no "independent indicia of the likely merit" of the allegations made in the motion, a hearing is not required. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citation omitted).

business, admitting that he intentionally started the fire that eventually burned down the bar after he was thrown out for yelling racial slurs about two African-American men seated at the bar. (*See* Ex. B to Gov't Response, Plea Tr. at 10-14, ).

Stoker met Donna Moore, a truck driver from Wyoming, after he burned down the bar. (Ex. C to Gov't Response, Trial Tr. vol. 2, 93). Moore agreed to teach Stoker to drive a truck, and he met Moore at her residence in Wyoming several weeks later. (*Id*. at 94). The two went on a ten-day "run" through California and Utah, during which time Stoker confessed to Moore that he burned down the Dam Bar. (*Id.* at 94-95). Moore, frightened of Stoker following his confession but aware that she needed to report the event, attempted to leave an anonymous tip with the Grenada County Sheriff's Office after she and Stoker returned from their trip and Stoker returned to Mississippi. (*Id*. at 97). Eventually, Moore spoke with Dennis Hampton, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and indicated to him that she was fearful of retaliation from Stoker. (*See id*. at 98-100). Moore reluctantly agreed to testify in the case against Stoker for the arson of the Dam Bar, and Agent Hampton documented his conversation with Moore in a Report of Investigation. (*See* Ex. D to Gov't Response, "Moore ROI").

The Government provided the Moore ROI to Stoker in discovery. (Ex. C to Gov't Response, Trial Tr. vol. 2, 40-41). On March 29, 2011, the day after Stoker was sentenced to nine years imprisonment for the arson of the Dam Bar, he mailed Moore an envelope containing only the Moore ROI. (*Id.* at 37-38). Moore was out of town when the envelope containing the Moore ROI reached her home, but a neighbor, Marjorie Carmichael, was checking Moore's mail for her. (*Id*. at 67). Upon receiving the envelope, Carmichael opened the letter and forwarded it

to Moore's location. (*Id*. at 71-72). Carmichael, who was aware of Moore's agreement to testify against Stoker, was "100 percent" convinced that the letter was intended as a threat. (*Id*. at 82). Moore also testified that she interpreted the letter as a threat. (*Id*. at 103). When she received the letter, she "panicked" believing that Stoker was letting her know that he was aware of her cooperation with law enforcement. (*Id*.). She testified that she was in a "constant state of anxiety" and had numerous dreams in which she was burning. (*Id*. at 104). She testified that she was fearful every time she returned home. (*Id*.). She stated that she contacted Agent Hampton the morning after receiving Stoker's letter. (*Id*. at 102).

Agent Hampton subsequently interviewed Stoker, who denied that the letter was threatening. (*Id*. at 42-43). Stoker told Agent Hampton that "he just wanted to let [Moore] know that she was two-faced." (*Id*. at 43). Stoker also wrote a letter to the United States Attorney's office explaining that he sent the Moore ROI to Moore "to let her know that [he] know[s] she's two-faced." (*See* Ex. E to Gov't Response).

After a two-day jury trial, Stoker was found guilty on both counts of the indictment. Stoker's trial counsel withdrew after his conviction, and the Court appointed new counsel for Stoker's sentencing and appeal. On October 26, 2011, this Court sentenced Stoker to 108 months imprisonment to be followed by three years of supervised release. Stoker appealed his conviction and sentence. The Fifth Circuit Court of Appeals subsequently affirmed Stoker's conviction and remanded the case for resentencing.[2] *United States v. Stoker,* 706 F.3d 643 (5th Cir. 2013). On May 2, 2013, this Court resentenced Stoker to 60 months imprisonment followed

---

[2] The appellate court determined that Stoker's 18 U.S.C. § 1513(e) conviction was not a crime of violence under the career offender guideline.

by three years of supervised release. On or about March 24, 2014, Stoker filed the instant motion to vacate, set aside, or correct sentence in accordance with 28 U.S.C. § 2255, raising claims of ineffective assistance of counsel pretrial, at trial, at sentencing, and during appeal.

## Legal Standard

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v. Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255. Collateral attack limits a defendant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

## Discussion

Stoker's allegations in the instant motion are that his counsel was ineffective. The Sixth Amendment guarantees a criminal defendant the right to the "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Courts avoid a hindsight

analysis of counsel's conduct and indulge a "strong presumption" that counsel has rendered "reasonable professional assistance." *Strickland*, 466 U.S. at 689. Whether counsel has rendered constitutionally acceptable assistance requires consideration of whether trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and whether the deficient performance actually prejudiced the defense. *See id.* at 687.

In order to make the requisite showing of prejudice, a defendant must show that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different. *Id*. at 694 (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Absent an affirmative showing of prejudice, there is no merit to a claim of ineffective assistance of counsel. *See, e.g., Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the defendant's] right to a fair trial," there is no merit to an ineffective assistance of counsel claim). The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *Strickland*, 466 U.S. at 697; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

**A. The Witnesses**

Stoker argues that he provided his trial attorney with the names and telephone numbers of witnesses who would have testified that Stoker mailed them a copy of their statements, and that they did not feel threatened by the gesture. Despite being provided with this information, defense counsel did not call any of the witnesses to provide testimony at trial. This failure to conduct an

5

investigation and interview witnesses, Stoker maintains, constitutes the ineffective assistance of counsel.

Stoker raised this issue on direct appeal. (*See* Ex. F to Gov't Response, 30). The Fifth Circuit did not rule on Stoker's ineffectiveness claim, though it did find that "it is highly unlikely that the ineffective assistance argument is viable." *Stoker*, 706 F.3d at 647 n.3.

In a letter written to the Court prior to his sentencing, Stoker makes reference to the fact that his trial counsel advised him not to have certain witnesses testify, as these witnesses were related to a previous arson case. (*See* Ex. G to Gov't Response, 6-7). Stoker pleaded guilty to two felony arsons prior to the trial in this case. Stoker's jury in this trial heard no details of the first arson, but was informed only that Stoker was on parole for an undisclosed crime while he was in Wyoming with Moore. (*See id.*, Ex. C, 95). The jury only heard limited information about Stoker's second arson - the Dam Bar arson - which excluded reference to his racial motivation to burn down the bar. Had these alleged witnesses now complained of by Stoker actually testified, they could have opened the door to details of Stoker's previous arsons. Trial counsel made a strategic decision to prevent the jury from hearing details of Stoker's prior crimes, and that decision was not deficient. *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) ("conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"). Moreover, Stoker presents no basis for his argument that a different strategy would have yielded different results. Accordingly, the Court concludes that Stoker fails to establish that counsel performed ineffectively with regard to this issue.

**B. The Stipulations**

Next, Stoker alleges that on the morning of his jury trial, his attorney and counsel for the government entered into three stipulations: (1) that Stoker had placed the letter in the mail containing the first page of Donna Moore's statement; (2) that Stoker wrote a letter to the prosecutor, Assistant United States Attorney Dabbs, in which he admitted that he mailed Moore a first page of her statement; and (3) that Stoker was convicted in "the Dam Bar" case in which Donna Moore was a witness. Stoker maintains that these stipulations deprived him of the opportunity to present a defense to the alleged crimes, as his defense counsel conceded the elements of the crime.

At trial, the prosecution and defense agreed to stipulate that (1) Stoker mailed a letter to Donna Moore containing the Moore ROI, and that (2) Stoker wrote a letter to an Assistant United States Attorney attempting to explain himself. (*See* Ex. C to Gov't Response, Trial Tr. vol. 2, 10). The following items were admitted into evidence by stipulation: (1) the envelope that Stoker mailed to Moore; (2) the Moore ROI; (3) the letter to the AUSA; and (4) the judgment from The Dam Bar arson. (*Id.* at 10-11). Trial counsel was able to successfully redact any mention of Stoker's racial bias from the Moore ROI. (*Id*. at 11-12).

Trial counsel's stipulation limited the chances that the jury would hear evidence of Stoker's racial bias and past violent acts. The issue in this case was whether the letter Stoker sent Moore constituted a threat, not whether he mailed an envelope or what the envelop contained. Stoker even wrote a letter to the Assistant United States Attorney admitting that he sent the letter to Moore. Stoker has not presented any evidence that, but for the stipulations, this evidence would not have been admitted against him at trial, and thus, he cannot show that he was

prejudiced by counsel's decision.

### C. The Elements of the Offenses

Stoker also maintains that neither defense counsel nor the Government's attorney would provide the Court the elements of the alleged crimes, so the Court read the statutory provisions to the jury. Stoker alleges that defense counsel failed to object to the Court's recitation of the statutory elements rather than the Court reading the Fifth Circuit pattern jury instructions.

In its preliminary instructions, the Court read the language of two statutes, 18 U.S.C. §§ 876 and 1513, as opposed to reading the actual indictment.[3] (*See* Ex. C to Gov't Response, Trial Tr. vol. 2, 6). At the conclusion of trial, however, the Court instructed the jury on the elements of each count of the indictment. (*See* Ex. H to Gov't Response, Trial Tr. vol. 3, 14-16). The Fifth Circuit affirmed the Court's instructions in affirming both of Stoker's convictions. There is no merit to this argument.

### D. Express v. Implied Threat

Stoker alleges that nothing in his letter to Moore could have been a threat as would be a violation of § 876(c) or § 1513(e). The Court notes that the issue of whether Stoker's letter was actually a threat, and to what extent a threat can be implied, was raised on direct appeal. (*See* Ex. F to Gov't Response, 26). The Fifth Circuit held that the jury was within its discretion in finding that Stoker's mailing of the Moore ROI was indeed a threat. *Stoker*, 706 F.3d at 646-47 (holding that "the jury was free to infer that Stoker knew he was mailing a threat to injure Moore when he sent her the report"). Stoker cannot relitigate issues that have been raised and decided on direct

---

[3] The Court notes that the indictment made reference to Stoker's motivation to burn down the Dam Bar.

appeal. *See, e.g., United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). Accordingly, this claim is without merit.

### Certificate of Appealability

Although Stoker has not filed a notice of appeal, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Stoker must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court finds that a COA should not issue in this case.

### Conclusion

Stoker is not entitled to relief under 28 U.S.C. § 2255, and his motion to vacate, set aside, or correct sentence (ECF no. 59) is **DENIED**. A certificate of appealability from this decision is **DENIED**. The Court will enter final judgment by separate order.

**SO ORDERED**, **THIS** the 24th day of July, 2014.

/s/ Michael P. Mills
MICHAEL P. MILLS
U.S. DISTRICT JUDGE